**Weil, Gotshal & Manges LLP**

> Application GRANTED. The sentencing hearing scheduled for January 17, 2025 at 10:00 a.m. is adjourned *sine die*. By **January 17, 2025**, the parties shall file a joint letter informing the Court of the anticipated length of the *Fatico* hearing and the witnesses the parties intend to call.
>
> The Clerk of Court is directed to terminate ECF No. 562.
>
> SO ORDERED.
>
> *Jennifer H. Rearden*
> Jennifer H. Rearden, U.S.D.J.
> Dated: January 15, 2025

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

Daniel L. Stein
+1 (212) 310-8140
Daniel.Stein@weil.com

January 14, 2025

**ELECTRONICALLY FILED**

The Honorable Jennifer H. Rearden
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:  *United States v. Menachem Lieberman*, 23-cr-4-JHR-2

Dear Judge Rearden:

We represent the defendant, Menachem Lieberman, in the above-captioned matter. Pursuant to the Court's January 4, 2025, order (Dkt. 553) we, along with the Government, submit this joint letter advising the Court of Mr. Lieberman's request for a *Fatico* hearing. Although the parties hoped to resolve the factual issues in this case on the papers (*see* Dkt. 526), after reviewing the parties' respective submissions, Mr. Lieberman respectfully submits that a *Fatico* hearing is necessary prior to sentencing. Accordingly, we have set forth below with specificity the factual disputes that we regard as material to sentencing and the parties' respective positions on each dispute.

The Government has informed us that it considers two of the issues below to be material disputes of fact for purposes of sentencing and that it believes it has supported its positions on those issues by a preponderance through documentary evidence. Accordingly, absent Mr. Lieberman presenting live witness testimony, the Government does not believe that a *Fatico* hearing is necessary to resolve those disputes. Mr. Lieberman respectfully disagrees, and for each factual dispute identified below, intends to present evidence and argument regarding the proper inferences to be drawn from the evidence. Specifically, Mr. Lieberman intends to present testimony from a small number of live witnesses on some of the discrete issues discussed below. Moreover, as previously disclosed to the Court (*see* Dkt. 537 at 1-2), Mr. Lieberman submitted a FOIL to ACS for which he has not received a formal response. Mr. Lieberman anticipates that he may present additional evidence arising from that request, in addition to live testimony, at a *Fatico* hearing. In addition, even where there is no live testimony to be presented, it is Mr. Lieberman's view that the parties' disputes about the proper inferences to be drawn from the evidence are better addressed at a hearing, at which the parties can be fully heard on these issues, rather than in the course of a sentencing proceeding.

The Honorable Jennifer H. Rearden  **Weil, Gotshal & Manges LLP**
January 14, 2025
Page 2

As the Court is aware, the parties have been engaged in continuous discussions about the factual disputes in this case, since even before Mr. Lieberman pleaded guilty in March 2024. While those discussions have been professional and productive, the parties have not been able to reach agreement. Mr. Lieberman respectfully requests that a *Fatico* hearing be held so that the Court can evaluate the parties' respective positions on these factual disputes, so that sentencing can proceed in a focused and efficient fashion.

If the Court agrees that a *Fatico* hearing is warranted, we respectfully request that Mr. Lieberman's sentencing – which is scheduled for this Friday, January 17, 2025 – be adjourned until such a hearing can be scheduled and the issues are resolved. We estimate that the parties will be prepared for the *Fatico* hearing no later than March 3, 2025, and would be prepared to proceed to sentencing shortly thereafter.

***

**Factual Disputes Associated with Count I (Conspiracy to Defraud the United States)**

**1.** *Whether the 2019 religious contract between Martin Handler and Mr. Lieberman intended to convey an ownership interest in Project Social Care ("PSC") to Mr. Lieberman.*

Mr. Lieberman submits that the religious contract did not convey an ownership interest in PSC and that the purpose of the contract was not to convey any secular legal right but to address certain religious requirements under Jewish law. (Dkt. 546 at 20 n.42).

The Government contends that the 2019 contract purported to effectuate a sale of control over certain aspects of PSC from Handler to Mr. Lieberman (Dkt. 556 at 3). The Government does not believe the enforceability of the contract is a material issue necessary for resolution; rather, the relevant question is whether PSC's transactions with Mr. Lieberman's companies were at arm's length. The Government submits that the existence of the contract itself is evidence that Mr. Lieberman had a degree of control over PSC, thereby rendering any commercial transactions between PSC and Mr. Lieberman's other companies less than arm's length.

**2.** *Whether Mr. Lieberman's profit projections (see Dkts. 556-1, 556-2) demonstrate that he impermissibly profited from PSC as a CCP grantee.*

Mr. Lieberman submits that Simche Kinder, as a CCP grantee, was permitted to profit from the grant, as contemplated by the terms and nature of the grant.

The Government suggests that Mr. Lieberman viewed the "components" that he "acquired" from PSC as highly lucrative and that, under relevant HHS rules and regulations, it is impermissible for Mr. Lieberman's entity, Simche Kinder, to profit through the EHS CCP partnership with PSC, even if Simche Kinder was permitted to profit in other aspects of its business. (Dkt. 556 at 3-4). The Government does not assert that Simche Kinder did, in fact, profit, for reasons it has previously stated. The Government

The Honorable Jennifer H. Rearden  **Weil, Gotshal & Manges LLP**
January 14, 2025
Page 3

views any dispute on this issue to pertain to an interpretation of relevant rules and regulations and not a factual dispute.

**Factual Disputes Associated with Count II (Conspiracy to Commit Wire Fraud)**

**1.** *Whether aspects of the Church Avenue ACS program are indicia of fraud.*

Mr. Lieberman contends (as previewed at his guilty plea)[1] that the ACS waiver applied to the Church Avenue program, and that, as a result, the Guidelines loss during the period of the waiver overstates the seriousness of the offense, which is relevant to the Court's evaluation of the Section 3553(a) factors.

The Government notes that Mr. Lieberman pled guilty to participating in a conspiracy to defraud ACS from at least July 2020 through at least January 2023. The Government contends that, taken together, certain circumstances relevant to the Church Avenue ACS program indicate that Mr. Lieberman intended to defraud ACS from the outset of the program, *i.e.*, in or about July 2020, and carried on with that purpose through the period of time in which ACS had issued a Covid-19 waiver. The Government further contends the denials set forth below by Mr. Lieberman may constitute a denial of criminal intent as of in or about July 2020 in a manner inconsistent with his guilty plea. The Government reserves the right, as set forth in the parties' plea agreement, to seek a denial of the three-level adjustment under U.S.S.G. § 3E1.1 for acceptance of responsibility.

Underlying factual issues material to resolving this dispute include:

    **a.** *Whether the Church Avenue ACS program was "closed" due to Covid-19.* The Government claims that the ACS Church Avenue program was ineligible for the Covid-19 waiver because the facility was not closed due to Covid. (Dkt. 556 at 7-8). Mr. Lieberman contends that, although PSC may have been open at times during the pandemic, the ACS program is separate from the PSC Head Start program and the ACS was closed due to Covid. (*See* Dkt. 546 at 33).

    **b.** *Whether Mr. Lieberman "enrolled" children in an ACS program.* The Government states that Mr. Lieberman represented children as "enrolled" to ACS. (*See* Dkt. 556 at 11). Mr. Lieberman submits that children could not be enrolled without first enrolling with ACS, and submitting his program as their provider of choice. (Dkt. 546 at 31 n.66).

    **c.** *Whether the fact that children "were happy to attend" the Church Avenue ACS program means that the program could not have been closed due to Covid.*

---

[1] Mr. Lieberman has consistently made clear to the Government that this dispute, in particular, is material to his sentencing. *See* Plea Transcript at 32:24-35:5 (Counsel explaining that Mr. Lieberman intended to argue at sentencing that the loss amount in this case overstates the seriousness of the offense because of the effect of the applicable ACS Covid-19 waiver).

The Honorable Jennifer H. Rearden  **Weil, Gotshal & Manges LLP**
January 14, 2025
Page 4

Mr. Lieberman submits that, although the children enrolled at Church Avenue were willing to attend, PSC staff refused to allow the ACS program at Church Avenue to open due to ongoing concerns particularly about the Hasidic community, and, in particular, the negative stereotypes associated with the community during the pandemic (*i.e.*, that Hasidic Jews, like Mr. Lieberman and the children that sought to attend the program, were more likely than other groups to spread Covid).  (*See* Dkt. 546 at 29).

The Government states that, because the families of the children enrolled in the Church Avenue ACS program during the waiver period were happy and willing to have their children attend to the program, it means that the children were not prevented from attending the program due to Covid.  (Dkt. 556 at 11).

**d. *Whether Mr. Lieberman was authorized to – or had a reasonable belief that he was authorized to – use Harold Schwartz's signature and act on his behalf.***

Mr. Lieberman contends that it is material whether it was an accepted practice for PSC employees to use Schwartz's signature without explicit authorization, as it bears on his purpose in submitting the fake signature.  Mr. Lieberman submits that he did not submit Schwartz's false signature in an attempt to deceive ACS and did so only because he was told by Chaim Adler that it was an accepted practice at PSC.  (Dkt. 546 at 36).

The Government submits that Mr. Lieberman knew that use of Harold Schwartz's signature was improper because he repurposed the signature from a year-old W-9 form in his application to ACS to operate the Church Avenue program, and, on other occasions, forged Schwartz's signature.  (Dkt. 556 at 6 n.5, 7).  The Government also states that, whether other employees at PSC used a stamp of Schwartz's actual signature is "immaterial" because Mr. Lieberman himself did not use the stamp.  *Id.* at 6-7 n.6.

**e. *Whether the receipts Mr. Lieberman submitted to ACS indicating tuition charged for six students in his application to ACS to operate the Church Avenue program were intended to deceive ACS.***

Mr. Lieberman submits that the receipts were illustrative of the tuition that would be charged at the Church Avenue program, assuming the parents paid for the services out of pocket, which he believed was required in the application process.  (*See* Dkt. 556-10 (attachment listing proof of private payment as a requirement for the application under some circumstances)).

The Government contends that Mr. Lieberman's Church Avenue application included "fake receipts" demonstrating that children had previously attended the location full-time.  The Government states that the receipts were intended to deceive ACS because they contained historical dates of attendance, payment amounts, children's names, and details about particular weeks a child attended the Church Avenue location, and there is no indication on the face of the application or any other documentary evidence that the receipts were intended to be illustrative.  (Dkt. 556 at 10).

The Honorable Jennifer H. Rearden  
January 14, 2025  
Page 5

**Weil, Gotshal & Manges LLP**

  **f. *Whether Mr. Lieberman created and used the PSC Gmail account in an attempt to deceive ACS.***

  Mr. Lieberman states that he created the Google email account because he was never issued a PSC email address, and he believed that ACS rules required that he have a separate email address for each ACS program. (Dkt. 546 at 35). He also understood that he was authorized to act on behalf of Schwartz as a matter of common practice at PSC. (*See id.*).

  The Government contends that Mr. Lieberman used a fake Google email account (rather than a PSC-issued email address) to pose as Harold Schwartz and deceive ACS and did, in fact, use the account to pose as Harold Schwartz. (Dkt. 556 at 10).

**Factual Disputes Associated with the Obstruction of Justice Adjustment**

**1. *Whether Mr. Lieberman instructed Yehudah Zorger to lie in his interview with the HHS Office of the Inspector General ("OIG").***

Mr. Lieberman contends that he did not instruct Yehudah Zorger to lie, and the Government's statements that suggest Mr. Lieberman did misconstrue Zorger's testimony at co-defendant Arie Rangott's trial. Trial Tr. 282-83 (Zorger testifying that Mr. Lieberman did not explicitly tell him to lie but instead told him that Zorger will "tell them what they want to hear, and it will all blow over" and later noting that Mr. Lieberman may have actually said that the investigators "will hear what they want to hear" rather than telling Zorger to "tell them what they want to hear"). Mr. Lieberman plans to submit evidence, including by way of live testimony, to clarify any statements made to Zorger.

The Government states that Yehuda Zorger spoke to Mr. Lieberman before Zorger's interview, and Mr. Lieberman "conveyed that he wanted Zorger to lie" to the investigators, (Dkt. 556 at 13) (citing Trial Tr. 282-83 (Zorger testifying that he came away with a conversation with Mr. Lieberman with the understanding that "I know I can't say the truth")), and that the Court can interpret Mr. Zorger's testimony without the need for any further fact-finding.

**Factual Disputes Regarding Mr. Lieberman's Remorse**

**1. *Whether Mr. Lieberman has demonstrated remorse for his conduct associated with this case.***

The Government contends that Mr. Lieberman has failed "to acknowledge the full extent of his conduct in a way that undermines the sincerity of his remorse and claims of rehabilitation," (Dkt. 556 at 21), and is continuing to do so in particular through denying facts about his knowing involvement in a conspiracy to defraud ACS. The Government does not deny Mr. Lieberman's past charitable work. (*Id.* (acknowledging that Mr. Lieberman's "past charitable acts are substantial and especially commend[ing] Lieberman's courageous involvement in the exoneration of David Ranta")).

In light of this claim, Mr. Lieberman requests an opportunity at a *Fatico* hearing to present further evidence of his rehabilitation efforts and the sincerity of his remorse, including but not limited to

The Honorable Jennifer H. Rearden　　　　　　　　　　　　　　　　**Weil, Gotshal & Manges LLP**
January 14, 2025
Page 6

information about his work with the Aleph Institute and the deterrent effect his work has had on himself and his community. Moreover, Mr. Lieberman disputes the Government's claim that addressing factual disputes relevant to the Section 3553(a) factors bears on the Court's analysis as to his remorse and rehabilitation efforts.

Respectfully submitted,

/s/ *Daniel L. Stein*
Daniel L. Stein

cc: Assistant United States Attorneys Daniel Wolf, Catherine Ghosh, and Stephanie Simon (via ECF)